UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| S.W., | Case No. 23-cv-04269-LB |
| Plaintiff, | |
| v. | **ORDER REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| MARTIN J. O'MALLEY, | Re: ECF No. 19 |
| Defendant. | |

## INTRODUCTION

The plaintiff seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for social-security disability insurance (SSI) under Title II and Title XVI of the Social Security Act (SSA)[1] The plaintiff and the Commissioner filed briefs, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is decision without oral argument. The parties agree that remand is appropriate but dispute whether it should be for further administrative proceedings or for the payment of benefits. The court remands for further administrative proceedings.

---

[1] Br. – ECF No. 19. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*, Br. – ECF No. 23; Reply – ECF No. 26.

ORDER – No. 23-cv-04269-LB

**STATEMENT**

**1. Procedural History**

On June 29, 2020, the plaintiff filed an application for Title II and Title XVI benefits, alleging a disability beginning July 1, 2006. The Commissioner denied her claims initially and on reconsideration. An administrative hearing was held on April 26, 2022.[3] It was held telephonically due to the COVID-19 pandemic. The plaintiff was represented by counsel. Vocational Expert (VE) Jane Colvin-Roberson also testified at the hearing.[4] The Appeals Council denied a request for review on June 23, 2023, and the ALJ's decision became the final administrative decision.[5] The plaintiff timely filed this action on August 21, 2023.[6] All parties have consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[7]

**2. Medical Records**

The plaintiff challenges the ALJ's medical-opinion evidence and its discrediting of the plaintiff's symptom testimony.[8] The order summarizes the relevant records in the analysis, below.

**3. April 26, 2022, Administrative Hearing.**

**3.1   The Plaintiff's Testimony**

The plaintiff testified that she had a high school diploma. She testified that she has a driver's license and that she hasn't worked in fifteen years. The plaintiff had "live-in partner for about eight or nine of those years" and did side jobs like babysitting.[9] She testified that she stopped working in 2006 because she "wasn't doing well" and was laid off.[10]

---

[3] AR 17. Administrative Record (AR) citations refer to the numbers at the bottom right of the pages.
[4] *Id.* at 39.
[5] *Id.* at 1–5.
[6] Compl. – ECF No. 1.
[7] Consents – ECF Nos. 8, 9.
[8] Br. – ECF No. 19 at 9–19.
[9] AR 47.
[10] *Id.* at 48.

The plaintiff testified that she hasn't been able to work due to major anxiety and depression, which she has experienced "for [her] whole life."[11] She testified that her symptoms have worsened as she has gotten older and that she had to stop her mental-health treatment because she doesn't have medical insurance. She also testified that she has physical issues that prevent her from working, including difficulty breathing and swelling in her feet. She takes medication for blood clots in her legs, but the medication makes her "lightheaded and headachy." It also makes her "cycle very, very heavy to the point where [she] can't even get up and move around." She testified that the thought she could "get a job" but wasn't sure if she "could hold a job."[12]

The ALJ asked "what would happen if someone gave [the plaintiff] a job that was fairly simple in nature," and the plaintiff responded that she said sometimes she "can't leave the house" due to her anxiety. She explained that she gets "afraid to go outside or worried about going outside." She also testified that she suffers from depression, which causes her to "sleep and sleep" and not eat. She is "working with [a] psychiatrist and a therapist trying to work through all this stuff because [she] want[s] to work" and "get better."[13]

The ALJ asked the plaintiff about her ability to walk, and the plaintiff testified that she could walk "[a]bout half of a block at most" before she becomes "pretty winded."[14] She explained that she "feel[s] like [she] can't support [her] weight" when she's walking and that she has gained weight due to a thyroid condition.[15]

The ALJ asked whether the plaintiff has problems with sitting, and she responded that "it's okay to sit" but not for "too long." She explained that she "could sit for 20 minutes" but then she needs to "get up and move around to get the circulation going." She further testified that she could likely sit for up to 40 minutes if "super comfortable."[16]

---

[11] *Id.* at 51.
[12] *Id.*
[13] *Id.* at 52.
[14] *Id.* at 53.
[15] *Id.* at 54.
[16] *Id.* at 54–55.

In terms of her ability to lift things, the plaintiff testified that she could likely lift ten pounds but that she can't carry ten pounds because she'd be out of breath. She testified that she puts groceries in a backpack but that she also has groceries delivered. She tries to grocery shop with a friend who drives, but if she walks, she'll go to the closest store.[17]

The ALJ asked the plaintiff to describe what good days and bad days are like for her, and the plaintiff testified that she stays in bed on bad days and often has "pain or pain and anxiety and a headache." On good days, she testified that she showers, takes her dog for a walk, and gets coffee at a local coffee shop if she can afford it. The plaintiff testifies that she "want[s] to go out" and "be outside" but that "it's really hard for [her] to just get outside and be outside and be comfortable with that."[18]

The plaintiff testified that she takes medication for depression and anxiety and that "[i]t helps a little bit, but not completely." The ALJ asked whether the plaintiff could work with medication, and the plaintiff testified that "some days are better than others." She has trouble "following through with things." The medication "does make [her] feel better."[19]

The ALJ asked the plaintiff about her migraines, and the plaintiff testified that she experiences them "every other month maybe." She further testified that medication improves her symptoms.[20]

The ALJ asked the plaintiff about her history of drug use, and the plaintiff responded that she used drugs in the past to self-medicate but that her medication is "better for [her]" now. She testified that she previously used methamphetamine, alcohol, and marijuana. The ALJ asked whether a record indicating that the plaintiff was on methamphetamine for two-thirds of the year was accurate, and the plaintiff testified that it "seem[ed] like a lot," but that she no longer uses meth because she is on medication. According to the plaintiff, she last used methamphetamine at the end of 2020. She testified that she would use marijuana "as often as possible" because it made

---

[17] *Id.* at 55–56.

[18] *Id.* at 56–57.

[19] *Id.* at 57–58.

[20] *Id.* at 58.

ORDER – No. 23-cv-04269-LB                                      4

her feel better, but that she usually can't afford it. She further testified that she hasn't had any alcohol in a long time because it is a "super depressant" and makes her "feel really bad."[21]

The plaintiff's attorney then asked how the plaintiff's use of marijuana impacted her symptoms, and the plaintiff testified that it "makes [her] feel better all around" and "relaxes" her.[22]

In terms of her mental health, the plaintiff testified that she had suffered from depression for a long time but that it became severe after the birth of her son. The medication helps, but her symptoms have worsened with age. The plaintiff testified that she's "just not ready yet" to work but thanks to medication, seeing her psychiatrist, and seeing her therapist, she thinks she "can get better" and "live like a normal person again." With respect to her anxiety, the plaintiff testified that "[i]t feels terrible" and that it "stops [her] from doing the things [she] need[s] to do." She further testified that her symptoms sometimes improve with medication.[23]

The plaintiff's attorney asked about when the plaintiff went to the hospital for blood clots, and the plaintiff testified that she fell down some stairs on the way to her car after visiting a friend. She was unable to get up, and they called 911. The paramedics suspected dehydration, but the plaintiff's symptoms did not improve. She had difficulty breathing. A week later, the plaintiff had an MRI and learned that she had blood clots in her legs that had spread to her lungs. She testified that she takes medication but that she still has trouble walking about half a block.[24]

**3.2   The VE's Testimony**

The ALJ asked the VE to assume an individual with the same age, work experience and education as the plaintiff and that the person is able to perform medium work except the person "can occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, can stand and walk for six hours in an eight-hour workday with normal breaks, can sit for six hours in an eight-hour workday with normal breaks." The person "can frequently climb ramps and stairs, frequently

---

[21] *Id.* at 59–62.

[22] *Id.* at 63–64.

[23] *Id.* at 64–66.

[24] *Id.* at 66–69.

ORDER – No. 23-cv-04269-LB                    5

balance, stoop, kneel, crouch, and crawl and frequently climb ladders, ropes or scaffolds. The individual can perform low stress work." The individual cannot perform work "requiring hypervigilance or where the individual is responsible for the safety of others." The person "must avoid concentrated exposure to pulmonary irritants." The ALJ whether such a person could perform any work in the national economy, and the VE responded that the hypothetical individual could work as a machine feeder (DOT 699.686-010), a dietary aide (DOT 319.677-014), or a counter supply worker (DOT 319.687-010).[25]

The ALJ asked whether there would still be jobs that the person could perform if that same hypothetical individual were "off task ten percent of an eight-hour workday and absent once per month," and the VE testified that "those jobs would still remain" so long as "the ten percent time off task was not taken at one time."[26]

The ALJ next asked the VE to assume a hypothetical person of the plaintiff's age, education, and work experience who "is able to occasionally lift and carry 20 pounds, but frequently lift and carry ten pounds." He or she "can stand and walk for six hours in an eight-hour workday with normal breaks, can sit for six hours in an eight-hour workday with normal breaks," and "can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl, occasionally climb ladders, ropes or scaffolds." The individual is limited to "low stress work" and "no fast paced work such as assembly line work" or work requiring him or her "to be responsible for the safety of others." Finally, "[t]he individual must avoid concentrated exposure to fumes, odors, gases, [and] poor ventilation."

Based on this hypothetical, the ALJ asked whether jobs existed in the national economy that the person could perform, and the VE testified that the hypothetical individual could work as a package sorter (DOT 222.687-022), a merchandise marker (DOT 209.587-034), or a collator operator (DOT 208.685-010).[27]

---

[25] *Id.* at 70–72.

[26] *Id.* at 72.

[27] *Id.* at 72–74.

The ALJ asked the VE what the "maximum tolerance for being absent per month" is "before a person would not be employable," and the VE answered that "if the person is consistently absent more than one day per month, certainly, eight to 12 days per year, . . . that will become problematic for sustaining employment." The ALJ asked whether one absence per month would preclude employment, and the VE said it would not. The ALJ asked the VE whether more absences would preclude employment, and the VE testified that they would. The ALJ asked what the "maximum allowable off task behavior" is "before a person would not be able to sustain employment," and the VE testified that "if a person is off task more than ten percent of the workday, . . . it would be problematic for sustaining employment."[28]

The plaintiff's attorney asked the VE whether the jobs based on the ALJ's first hypothetical would still exist if the person could "rarely climb ramps or stairs, never climb ladders, ropes or scaffolds and [] rarely balance [or] stoop[], rarely kneel[], crouch[], [or] crawl[]." The VE testified that only the machine feeder position would remain. The plaintiff's attorney asked whether the jobs would still be available if the hypothetical individual "could only stand and walk for three hours and sit for three hours," and the VE answered that none of the jobs would remain.[29]

Regarding the ALJ's second hypothetical, the plaintiff's attorney asked if those jobs would still be available if the individual could occasionally "stand and walk and have to take frequent breaks from sitting." The VE replied that the jobs would be eliminated.[30]

### 4. ALJ Findings

At step one, the ALJ found that the plaintiff met the insured status of the SSA through December 31, 2011, and that the plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 1, 2006.[31]

---

[28] *Id.* at 74–75.

[29] *Id.* at 76–77.

[30] *Id.* at 77.

[31] *Id.* at 20.

At step two, the ALJ found that the plaintiff has the following severe impairments: mild degenerative disc disease of the lumbar spine, hypothyroidism, obesity, major depressive disorder, generalized anxiety disorder, and polysubstance abuse disorder.[32]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.[33]

Before reaching step four, the ALJ found that the plaintiff had a residual-functional capacity (RFC) to perform medium work with the following limitations:

> The plaintiff "can frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch and crawl; and frequently climb ladders, ropes, or scaffolds. [She] can perform low stress work, which is defined as performing simple, routine tasks involving little independent judgment, if any, and few workplace changes, if any; and work requiring no interaction with the public, and brief, occasionally interact with co-workers. She cannot perform fast paced work such as assembly line work, and work requiring hyper vigilance or where she is responsible for the safety of others. She must avoid concentrated exposure to humidity, fumes, dusts, gases, poor ventilation and other pulmonary irritants. She would be absent more than once per month.[34]

At step four, the ALJ found that the plaintiff has no past relevant work and at least a high school education.[35]

At step five, the ALJ found that there are jobs in the national economy that exist in significant numbers that the plaintiff can perform. Accordingly, the ALJ concluded that the plaintiff is not disabled.[36]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591

---

[32] *Id.*

[33] *Id.* at 20–21.

[34] *Id.* at 22.

[35] *Id.* at 26.

[36] *Id.* at 26–27.

(9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (cleaned up). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).
>
> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).
>
> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) improperly assessing the plaintiff's RFC, (2) improperly weighing the medical opinion evidence, (3) failing to base his step-three findings on substantial evidence, and (4) disregarding the plaintiff's testimony about her symptoms.[37] The Commissioner argues that remand for further administrative proceedings is appropriate because (1) the plaintiff is not entitled to any Title II benefits on this record, (2) her history of substance abuse "necessitates further factual development and administrative proceedings," (3) "[t]here are serious doubts" about the plaintiff's disability claim, and (4) the plaintiff's own arguments support further administrative proceedings to resolve the conflicts and ambiguities in the record that the plaintiff points out in her briefing.[38] In reply, the plaintiff contends that remand for the payment of benefits is appropriate under the credit-as-true rule.[39] The court remands for further proceedings because the ALJ (1) did not base his step-three findings on substantial evidence, (2) improperly disregarded the plaintiff's symptom testimony, (3) improperly weighed the medical-opinion evidence, and (4) did not support the plaintiff's RFC with substantial evidence.

---

[37] Br. – ECF No. 19 at 9–22.

[38] Br. – ECF No. 23 at 3–9.

[39] Reply – ECF No. 26 at 4–9.

**1. Whether the ALJ Erred in Failing to Base Step-Three Findings on Substantial Evidence**

    **1.1    Legal Standard**

At step three of the five-step framework, "[i]f a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled." *Lewis v. Apfel*, 236 F.3d 503, 512 (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* "Medical evidence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" *Marcia v. Sullivan*, 900 F.2d 172, 175–76 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1526). Accordingly, at step three, "the ALJ must explain adequately his evaluation of the alternative tests and the combined effects of the impairments" to determine whether a claimant equals a listing. *Id.* at 176.

    **1.2    Application**

The ALJ found that the plaintiff has the following moderate limitations: (1) "understanding, remembering, or applying information;" (2) "interacting with others;" (3) "concentrating, persisting, or maintaining pace;" and (4) "adapting or managing oneself."[40] The ALJ relied on a psychological disability-evaluation report from Laura Jean Catlin, Psy.D., in making these findings. But Dr. Catlin found that the plaintiff experienced marked limitations in most of these same categories. She concluded that the plaintiff had marked limitations: (1) "interacting appropriately with the general public;" (2) "accepting instruction and responding appropriately from supervisors;" (3) "maintaining her attention for a two-hour segment;" (4) "when trying to maintain an adequate pace and persistence while performing complex/detailed tasks;" and (5) "adhering to basic standards of neatness and cleanliness."[41] Remand is appropriate here given the discrepancies between the ALJ's findings and Dr. Catlin's report. The ALJ's step-three determination does not appear to be based on substantial evidence.

---

[40] AR 21.

[41] *Id.* at 541–42.

**2. Whether the ALJ Erred by Discounting the Plaintiff's Testimony**

**2.1 Legal Standard**

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112, *superseded by regulation on other grounds as stated in Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review, the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up); *see also* 20 C.F.R. § 416.929. And the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

**2.2 Application**

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but that her testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[42] That is

---

[42] AR 23.

insufficient. The ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. The ALJ wrote: "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent."[43] These are "boilerplate statement[s]" and "introductory remark[s]" that "fall[] short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is made." *Treichler*, 775 F.3d at 1103. The court remands on this ground.

### 3. Whether the ALJ Erred in Considering the Medical Evidence

#### 3.1   Legal Standard

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.920b; *see Orn*, 495 F.3d at 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

The Social Security Administration promulgated new regulations governing an ALJ's consideration of medical opinions, effective March 27, 2017. The new framework "eliminate[s] the physician hierarchy, deference to specific medical opinions, and assigning weight to a medical opinion." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (cleaned up); 20 C.F.R. § 416.920c(a). Likewise, the Ninth Circuit's previous "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion" is "incompatible with the revised regulations." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). But the ALJ must still articulate how he or she considered every medical opinion and how persuasive he or she finds each. *Id.*; *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b). Persuasiveness is now evaluated based on five factors: "1) supportability; 2)

---

[43] *Id.*

ORDER – No. 23-cv-04269-LB                    13

consistency; 3) relationship with the claimant; 4) specialization; and 5) 'other factors.'" *V.W.*, 2020 WL 1505716, at *13 (citing 20 C.F.R. § 416.920c(c)); *Woods*, 32 F.4th at 792 (factors include "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records").

Supportability and consistency are the two most important factors, and the ALJ is required specifically to address them. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Kitchen*, 2023 WL 5965704 at *5. Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Unlike with supportability and consistency, the ALJ is not normally required to explain how he or she considered the other factors. *V.W.*, 2020 WL 1505716, at *14; 20 C.F.R. § 416.920c(b)(2). But the ALJ is required to do so where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 416.920c(b)(3).

### 3.2 Application

Tiffany Arnold, M.D., the patient's treating physician at Lifelong Trust Clinic, provided a medical-source statement concerning the plaintiff's mental impairments.[44] The ALJ found Dr. Arnold's opinion to be "partially persuasive, to the extent she limited the claimant to performing

---

[44] AR 756–61.

essentially simple routine tasks and found moderate limitations in most categories of mental functioning." The ALJ disagreed with "Dr. Arnold's estimate of [three] days of absence per month from work."[45] The plaintiff contends that "the ALJ did not articulate the factors of supportability and consistency" when discussing Dr. Arnold's opinion. The Commissioner concedes that the ALJ did not evaluate Dr. Arnold's opinion "in conformance with the controlling regulations."[46] Remand is appropriate here.

Laura Jean Catlin, Psy.D., examined the plaintiff.[47] The ALJ did not find Dr. Catlin's psychological disability-evaluation report to be persuasive for four reasons: (1) her examination was limited in scope; (2) the plaintiff's mental-status examinations were "generally normal;" (3) Dr. Catlin "did not consider the [plaintiff's] extensive polysubstance abuse history;" and (4) the plaintiff's "medication was helpful in controlling her mental symptoms."[48] This is also insufficient concerning the supportability and consistency factors. Indicating — without any further explanation — that her examination was "limited in scope" fails to show that Dr. Catlin's opinion is unsupported. To the contrary, the record shows that Dr. Catlin's findings are well-supported because they are based on a clinical interview, a mental status examination, a Montreal Cognitive Assessment, a Beck Depression Inventory, and a Burns PTSD Inventory.[49] Regarding consistency, symptoms (and efficacy of medication) can fluctuate. But the ALJ is required to evaluate consistency. The ALJ's finding that that Dr. Catlin's report does not consider her drug use is not completely accurate, however, because it does indicate that the plaintiff has used marijuana for several years. Remand is appropriate here because the ALJ did not address the supportability factor at all. His findings also were also inaccurate concerning Dr. Catlin's consideration of at least some of the plaintiff's history of drug use.

---

[45] *Id.* at 25.

[46] Br. – ECF No. 19 at 16–17; Br. – ECF No. 23 at 9.

[47] AR 535–43.

[48] *Id.* at 25.

[49] *Id.* at 535.

ORDER – No. 23-cv-04269-LB                    15

1  Sergiv Barsukov, Psy.D., and Karen Ying, M.D., wrote non-examining State Agency
2  opinions.[50] The ALJ found their opinions to be "persuasive because they are generally consistent
3  with the preponderance of longitudinal evidence of record as whole" and "limited the [plaintiff] to
4  work consistent with the RFC adopted herein."[51] Again, the ALJ failed to discuss the
5  supportability and consistency factors. The court remands on this ground.

6  Farah Rana, M.D., also examined the plaintiff and wrote an internal-medicine evaluation. The
7  ALJ found Dr. Rana's opinion to be "persuasive because it [was] consistent with the generally
8  sparse treatment record," the plaintiff's "objective findings are generally normal," and because
9  "Dr. Rana examined the [plaintiff] personally."[52] While the ALJ discussed consistency and
10  supportability here to an extent, Dr. Rana's authored her opinion in May 2021.[53] The plaintiff
11  sought treatment in December 2021 and was diagnosed with blood clots in her right leg and both
12  lungs as well as acute deep vein thrombosis in her right leg.[54] Thus, Dr. Rana's opinion is not
13  consistent with the plaintiff's treatment record. Remand is appropriate here to account for this
14  discrepancy. The ALJ should address the supportability and consistency of Dr. Rana's opinion in
15  light of the plaintiff's subsequent treatment records. *See Treichler*, 775 F.3d at 1103–04
16  (explaining that "further administrative proceedings would be useful" when "conflicts,
17  ambiguities, [] gaps, or factual issues" exist in the record).

### 4. Whether Substantial Evidence Supports the RFC

#### 4.1 Legal Standard

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not [a] physician, to determine residual functional capacity [RFC]"). The ALJ's determination of a

---

[50] *Id.* at 128, 90.
[51] AR 25.
[52] *Id.* at 24.
[53] *Id.* at 582–84.
[54] *Id.* at 764.

claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison*, 759 F.3d at 1010. In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see also Orn*, 495 F.3d at 630 ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

### 4.2 Application

First, the plaintiff contends that the ALJ's RFC supports a finding of disability because it indicates that she would be absent more than once per month after the VE testified that being absent from work more than once per month would eliminate jobs in the national economy.[55] Based on this argument alone, "[t]he Commissioner concedes that substantial evidence does not support the [ALJ's] finding or the step five determination." The Commissioner contends that remand for further administrative proceedings because "there are significant conflicts and ambiguities" in the ALJ's decision as a whole, including that "the absenteeism limitation in the RFC simply does not jibe with the ALJ's other findings."[56] As outlined above, remand is appropriate here based on the ALJ's insufficient treatment of the medical evidence as well as the plaintiff's symptom testimony. On remand, the ALJ should "resolv[e any] conflicts in medical testimony" and "resolv[e any] ambiguities.'" *Garrison*, 759 F.3d at 1010.

### 5. Remand

Ordinarily, "[i]f additional proceedings can remedy defects in the original proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). The language of the "Social Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or

---

[55] Br. – ECF No. 19 at 10.

[56] Br. – ECF No. 23 at 7.

*without* remanding the cause for rehearing.'" *Id.* (citing 42 U.S.C. § 405(g)). The court remands here because the ALJ's findings are not supported by substantial evidence. Further administrative proceedings would be useful here to ensure the record is "free from conflicts and ambiguities" and that "all essential factual issues have been resolved." *Treichler*, 775 F.3d at 1103–04.

## CONCLUSION

The court remands for further administrative proceedings.

**IT IS SO ORDERED.**

Dated: September 14, 2024



_____
LAUREL BEELER
United States Magistrate Judge